UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIRZA M. BAIG, Plaintiff, | § § § § | |
| v. | § | C. A. NO. _____ |
| | § § § | |
| ROBERT A MCDONALD, SECRETARY OF VETERANS AFFAIRS Defendant, _____ | § § § § § | DEMAND FOR JURY TRIAL |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, MIRZA M. BAIG filing this Plaintiff's Original Complaint, complaining of Defendant ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS and in support thereof respectfully shows this Court as follows:

### JURISDICTION AND VENUE

1. Plaintiff invokes the jurisdiction of this Court pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sections 621-633, 28 U.S.C. Sections 1331, 1343(4) and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. sections 2000e *et seq*. ("Title VII). This action arises under laws of the United States regulating commerce and providing for the protection of Civil Rights

2. The unlawful employment practices alleged in this complaint were committed in the Southern District of Texas. Plaintiff is employed in the Southern District of Texas. Venue is proper pursuant to 28 U.S.C. section 1391(b)(2).

## PARTIES

3.  Plaintiff, MIRZA M. BAIG, is a male citizen of the United States of America, a resident of Texas.

4.  Plaintiff avers on information and belief that defendant, ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS, is an active United States governmental agency and may be sued in this court under Title VII and the ADEA.

5. The defendant is an "employer" within the meaning of section 701(b) of Title VII and the ADEA in that it engages in an industry affecting commerce and has employed the requisite number of employees for the requisite duration under Title VII and the ADEA.

## ADMINISTRATIVE PROCEDURES

6.  Plaintiff timely filed a charge of discrimination against the defendant with the Equal Employment Opportunity Commission ("EEOC") on or about November 25, 2014, within 300 days of the occurrences of which he now complains in this Complaint. A copy of that charge is attached hereto as Exhibit 1.

7.  Plaintiff received a "notice of right to file a civil action" from the EEOC after February 1, 2016 entitling him to commence this action within 90 days of his receipt of that notice. Further, this Complaint has been filed within 90 days of the receipt of that notice. A copy of that notice is attached hereto as Exhibit 2.

8.  Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action. All administrative remedies have been exhausted. There are no other laws prohibiting the unlawful employment practices alleged in this complaint under which Plaintiff was obliged to make a complaint or charge.

STATEMENT OF FACTS

9.  Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination and Employment Act in that it employed and employees the requisite number of employees under Title VII and the ADEA during all times relevant to this complaint.  Plaintiff is an Indian male over forty-years of age (40) and is employed by defendant, ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS.  Plaintiff's national origin is Indian and Plaintiff's religion is Muslim and has been throughout the time that the actions complained of in this complaint occurred.  During all of the alleged discriminatory actions complained of in this complaint, plaintiff was above the age of forty-years old (40).

10.  Plaintiff began working for the Defendant on or around October 30, 1989.  Plaintiff is currently employed as an Information Technology Specialist, GS-11 and has been during the entire time that the allegations in this complaint occurred.

11.  In the summer of 2014, Kevin Lenamond, Chief Information Officer, became Plaintiff's direct supervisor.  Mr. Lenamond is a Caucasian male.

12.  At the time, Plaintiff had been in this department for at least 10 years, and never had any issues.  On or around August, 2014, Kevin Lenamond approached Plaintiff as Plaintiff was in the hall on the way to the lunchroom and asked Plaintiff, "What do you know about ISIS?"

13.  Plaintiff responded that he did not know anything about them and walked away.

14.  On October 16, 2014, Mr. Lenamond told Plaintiff that he received a complaint against Plaintiff from another employee.  Mr. Lenamond went on to tell Plaintiff that he knows the person who made the complaint very well and she is a friend of his.

15. Plaintiff asked for a copy of the complaint. Mr. Lenamond never gave Plaintiff a copy of the complaint. Plaintiff sent an email to Mr. Lenamond asking for the complaint and asking for an opportunity to respond to the complaint.

16. On October 28, 2014, Mr. Lenamond approached Plaintiff in front of his peers. Plaintiff was off the clock at the time and was attempting to leave for the day to go pick up his children. At this time, Mr. Lenamond blocked Plaintiff from leaving his cubicle and began yelling at Plaintiff in front of his peers.

17. Mr. Lenamond yelled because there was an employee, Sammi Satterla, who was working from home at the time. This particular coworker is a Caucasian female. As Mr. Lenamond blocked Plaintiff from leaving his cubicle for the day, he yelled at Plaintiff, "Why didn't you respond to Sammi's email?" Mr. Baig stated that he did not email Sammi back at that time because Sammi was not at work, she was at home, and he did not have the particular software to support her request, so he forwarded it to the side of the business that could handle it.

18. Plaintiff put on his jacket and maneuvered to get past Mr. Lenamond without touching him. As Plaintiff was leaving, Mr. Lenamond continued to yell at Plaintiff that he was going to the Union about him.

19. On October 29, 2014, the following day, Plaintiff complained to ORM in the informal process to attempt to resolve this issue. It was also on October 28, 2014, that Mr. Lenamond assigned Sammi Satterla to monitor Plaintiff, and to provide him with directives, even though, she was a coworker and at the time, was working from home due to a worker's compensation injury.

20. On November 3, 2014, Plaintiff made another complaint to ORM of hostile work environment.

21. On November 5, 2014, Mr. Lenamond accused Plaintiff of coming to work late and leaving early. This is the first time that any supervisor had ever made such a complaint about Plaintiff.

22. On November 19, 2014, Mr. Baig received an evaluation of fully successful. This evaluation came as a surprise to Plaintiff because his supervisor before Mr. Lenamond, Kevin Tevebaugh, told Plaintiff that he would receive a good evaluation. Plaintiff received this evaluation after making a complaint to ORM for hostile work environment and discrimination.

23. On November 25, 2014, Plaintiff filed a formal written charge of discrimination. On that same day, Plaintiff received an email from Mr. Lenamond stating that he has been instructed several times not to transfer work order tickets. Mr. Lenamond also stated in this email that he had given Plaintiff a written counseling on this matter, and Plaintiff continued to do so. Mr. Lenamond then stated that Plaintiff was not allowed to transfer tickets.

24. Plaintiff never received written counseling from Mr. Lenamond regarding this and when Mr. Lenamond emailed Plaintiff regarding a verbal complaint, and what the complaint was, Mr. Lenamond never responded to Plaintiff.

25. On this same day, Plaintiff again requested the specific ticket number that Mr. Lenamond was referring to about transfer of tickets. Again, Plaintiff received no response from Mr. Lenamond.

26. Plaintiff also sent an email to Mr. Lenamond stating that he wanted Mr. Lenamond to stop harassing him and that he believed that Mr. Lenamond was making this a hostile work environment and believed that Mr. Lenamond was retaliating against him.

27. On January 20, 2015, Plaintiff was issued a formal reprimand from Robert Page, III, for failure to follow instructions. This reprimand that Plaintiff received references this

November 25, 2014 email that Kevin Lenamond sent. Plaintiff never had any contact with Robert Page, III, prior to receiving this letter of reprimand.

28. On or around January 20, 2015, Plaintiff amended his complaint regarding Robert Page, III and Kevin Lenamond. Robert Page, III is also a Caucasian male. Plaintiff responded to Kevin Lenamond by email in both October, 2014 and November, 2014. It was Mr. Lenamond who never responded to Plaintiff regarding what specific transfer tickets Mr. Lenamond had an issue with.

29. Robert Page, III never spoke with Plaintiff or gave Plaintiff the opportunity to respond, either in writing or verbally, as to any reprimand for failure to follow instructions. Instead, he just issued it on January 20, 2015. This reprimand has the effect of negatively affecting Plaintiff's retirement, of affecting Plaintiff's ability to receive a promotion or transfer to another department, and has affected Plaintiff's health.

30. Also, Plaintiff has been on light duty since 2014 related to a carpal tunnel surgery that was performed on his right wrist. The light duty that Plaintiff was placed on required Plaintiff to load software remotely. While, this was called light duty, there is another employee, Herbert Quinoses, who is doing this job and he is not on light duty.

31. On or around April, 2015, after Plaintiff filed a complaint against Robert Page, III, Mr. Page began questioning Plaintiff's worker's compensation injury and when Plaintiff would be off light duty by talking to the worker's compensation chief, Willie Turner. Mr. Page and Plaintiff had no contact prior to this reprimand and Mr. Page is not Plaintiff's direct supervisor, yet following Plaintiff's EEO complaint about Mr. Page, he began to question when Plaintiff's light duty would end.

32. On February, 2015, Kevin Lenamond appointed Angela Williams as Plaintiff's direct supervisor.

33. On or around April 29, 2015, Angela Williams told Plaintiff during his mid-term evaluation that he would be rated non-satisfactory performance for the year. The annual performance review begins on September, 2014 and ends on September, 2015.

34. When Plaintiff asked the reason for this rating, he was told by Angela Williams that Sammi Satterla has the record of training, but never explained anything further.

35. Plaintiff was surprised because he completed all of the training that he was made aware of. Plaintiff was the only person in the department who was notified that he was receiving an unsatisfactory performance review.

36. Plaintiff was also surprised to hear this because it was April, 2015, and Plaintiff's performance review would not be complete until September, 2015.

37. Plaintiff filed an amended complaint regarding this treatment on or around May 5, 2015.

38. On June 19, 2015, Plaintiff requested a religious accommodation to end his tour of duty early and work through lunch, during the month of Ramadan. This was an accommodation that his previous supervisor, Kevin Tevebaugh, had allowed. Plaintiff asked for this request to make it easier for him to go to the temple and pray. His supervisor, Angela Williams denied this request.

39. Plaintiff filed an amended EEO complaint on July 10, 2015, as this was an accommodation that his previous supervisor allowed and that this was both discriminatory and in retaliation for Plaintiff filing a prior EEO complaint.

7

40. Based on knowledge, information and belief, defendant was treating Plaintiff different than other employees in the department by informing him that he was going to receive an unsatisfactory review. Plaintiff is the only person whose National Origin is Indian in the department. Plaintiff is the only person whose religion is Muslim in the department. Plaintiff, who at the time was 69 years of age, was the oldest person employed in the department. Moreover, this action occurred within three months of Plaintiff filing an amended EEO complaint regarding Defendant's treatment of Plaintiff. Defendant's actions were taken as a direct result of Plaintiff making these EEO complaints of discrimination and retaliation to the Office of Resolution Management. All of Defendant's actions have had the effect of negatively impacting Plaintiff ability to get a promotion, to transfer, and negatively affects his retirement income, and his health.

## INCORPORATION OF ALLEGATIONS

41. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## FIRST CLAIM FOR RELIEF

**Violation of Title VII – National Origin/Race Discrimination**

42. The effect of defendant's actions, as alleged above, denied plaintiff equal employment opportunities and discriminated against him on the basis of his race and/or national origin in violation of Title VII. Plaintiff was a member of a protected class under Title VII as his National Origin is Indian. Plaintiff was intentionally given a negative evaluation and reprimands that would negatively impact his ability to be promoted and the harassment negatively affected his health. In August, 2014, Plaintiff's supervisor approached him about what he thought about ISIS.

43. The effect of defendant's actions, as alleged above, denied plaintiff equal

employment opportunities and discriminated against him on the basis of his race and national origin. Plaintiff, an Indian male, was treated differently than similarly situated persons who were of a different race and national origin due to these negative evaluations and written reprimands because he was from India. Based on knowledge, information and belief, other employees of a different national origin than plaintiff were not receiving negative evaluations and reprimands, and ultimately, Plaintiff was losing promotion opportunities and opportunities to increase his retirement. Plaintiff was singled out in his department and verbally abused by his supervisor, Kevin Lenamond, such that other employees could hear what was going on. This caused Plaintiff embarrassment.

44. Plaintiff, an Indian male, was treated differently than similarly situated persons who were of a different race and national origin by losing promotion opportunities. Sammi Satterla was promoted to a lead on or around January, 2015, even though she was also on worker's compensation light duty and worked from home for about six months.

45. Sammi Satterla is much younger than Plaintiff and is Caucasian.

46. Plaintiff has suffered financial injury as a result of Defendant's treatment.

47. Plaintiff has suffered irreparable injury from the defendant's policy and practice as stated in this complaint.

48. Plaintiff has suffered emotional and mental anguish as a result of defendant's actions and injury to his health as a result of Defendants actions.

49. Defendant acted with malice and reckless disregard to plaintiff's civil rights therefore entitling plaintiff to punitive and/or exemplary damages.

50. Plaintiff is entitled to money damages for defendant's violation of his rights as guaranteed by Title VII.

## SECOND CLAIM FOR RELIEF

**Violation of the Age Discrimination in Employment Act**

51. Plaintiff was born on May 26, 1945 and was above the age of forty-years old (40) at the time of the adverse employment action and during all unlawful discrimination complained of in this petition. Additionally, the Defendant is the oldest person in his department and the only person who received a negative evaluation in November, 2014 and was informed in April 2015 that he would receive an unsatisfactory mid-term evaluation. The majority of Plaintiff's department is substantially younger than Plaintiff.

52. In mid-October, 2014, Kevin Lenamond told Plaintiff that he received a complaint from someone regarding his work and that this person was a good friend of his. When Plaintiff asked for more information about the complaint, he received no response.

53. In late October, 2014, Plaintiff's direct supervisor at the time, Kevin Lenamond, blocked Plaintiff from being able to leave his cubicle and yelled at Plaintiff such that Plaintiff's peers could hear this treatment.

54. On or around November 5, 2014, Mr. Lenamond accused Plaintiff of coming in late and leaving work early. He also went to the Union regarding this. Plaintiff has been employed for the Defendant for more than 25 years and never had a problem with attendance. Mr. Lenamond also made other false accusations regarding Plaintiff to the Union.

55. In mid-November, 2014, Plaintiff received an evaluation of fully successful from Mr. Lenamond. This was not a good evaluation and Plaintiff was surprised because his previous supervisor, Kevin Tevebaugh, told Plaintiff before he left that he would receive a good evaluation.

56. In late November, 2014, Mr. Lenamond again claimed to Plaintiff that he was transferring work tickets, but when Plaintiff asked about the specific work tickets, Mr. Lenamond would not tell him what work ticket he was talking about. Plaintiff cannot correct something, if his supervisor refuses to give him information to correct it. Plaintiff sent an email

asking Mr. Lenamond to stop harassing him and complained by email to Mr. Lenamond that he was making the work environment hostile.

57. Plaintiff later received a Written Reprimand in January 20, 2015. Plaintiff was the only person in his department being treated this way.

58. The effect of Defendant's actions, as alleged above, denied plaintiff equal employment opportunities and discriminated against him on the basis of his age in violation of the ADEA.

59. As a person above the age of forty-years old (40), plaintiff was a member of a protected class at the time, and by receiving evaluations of this nature, reprimands, and harassment, Plaintiff was being denied promotion opportunities, the ability to transfer, and had an effect on his retirement and a negative impact on his health.

60. Because of such treatment, Plaintiff has suffered irreparable injury from the defendant's policies and practices as stated in this petition.

61. Plaintiff has suffered emotional and mental anguish as a result of defendant's actions. Defendant committed such action with malice and reckless disregard to plaintiff's civil rights.

62. Plaintiff has suffered irreparable injury from the defendant's unlawful employment practices as set forth in this petition.

## THIRD CLAIM FOR RELIEF

**Violation of Title VII – Religious Discrimination**

63. The effect of defendant's actions, as alleged above, denied plaintiff equal employment opportunities and discriminated against him on the basis of his religion in violation of Title VII. Plaintiff was a member of a protected class under Title VII because of his religion, Muslim, and due to Plaintiff's negative performance evaluations and reprimand, Plaintiff was losing promotion opportunities, transfer opportunities, his retirement was negatively affected, and his health.

64. The effect of defendant's actions, as alleged above, denied plaintiff equal

employment opportunities and discriminated against him on the basis of his religion. Plaintiff, a Muslim male, was treated differently than similarly situated persons who were of a different religion by being singled out with the reprimands and negative evaluations because he was of a different religion than defendant.

65. Plaintiff was initially asked about ISIS by his supervisor, Kevin Lenamond, in August, 2014, which was offensive to Plaintiff's religion, Muslim, and his national origin, Indian.

66. Plaintiff was verbally insulted by Kevin Lenamond on or around late October, 2014, in which Mr. Lenamond blocked Plaintiff's cubicle as he yelled at Plaintiff in front of other employees, and yelled that he was going to the union regarding Plaintiff. This had the effect of embarrassing and humiliating Plaintiff.

67. On June 19, 2015, Plaintiff requested a religious accommodation to end his tour of duty early and work through lunch, during the month of Ramadan. This was an accommodation that his previous supervisor, Kevin Tevebaugh, had allowed. Plaintiff asked for this request to make it easier for him to go to the temple and pray, as Plaintiff is Muslim. His supervisor, Angela Williams, denied this request.

68. Based on knowledge, information, and belief, that plaintiff was of a different religion than Kevin Lenamond, Robert Page, and Angela Williams, and that Plaintiff is the only Muslim in his department.

69. Defendant questioned Willie Turner, the Worker's Compensation chief, about Plaintiff's light duty and how long Plaintiff would be on light duty on or around April, 2015. However, Sammi Satterla, a Caucasian female employee and a different religion than Plaintiff, had a worker's compensation injury, was allowed to work from home for about six months, and received a promotion to lead, when she returned to work.

70. Plaintiff has suffered injury to his health, emotional injury, and mental anguish as a result of defendant's actions.

71. Defendant acted with malice and reckless disregard to plaintiff's civil rights therefore

entitling plaintiff to punitive and/or exemplary damages.

72. Plaintiff is entitled to money damages for defendant's violation of his rights as guaranteed by Title VII.

## FOURTH CLAIM FOR RELIEF

### Violation of Title VII – Retaliation

73. Plaintiff made complaints to the Office of Resolution Management and EEOC regarding Defendant Kevin Lenamond's treatment as early as October 29, 2014. Plaintiff made another complaint with the Office of Resolution Management and EEOC in early November, 2014 regarding his supervisor, Kevin Lenamond's treatment. Additionally, Plaintiff filed a formal written complaint to the Office of Resolution Management and EEOC on November 25, 2014 regarding Kevin Lenamond's discriminatory treatment against Plaintiff. Plaintiff made complaints that he believed to be, and were, protected by Title VII.

74. Based on knowledge and belief, plaintiff alleges that he was subjected to additional harassment from his supervisor Kevin Lenamond as he made complaints regarding work, but when Plaintiff asked Mr. Lenamond to tell him specifically about complaints, his supervisor was not responsive. The last time this occurred was on November 25, 2014. Plaintiff also received a review of fully successful in mid-November, 2014 following his discrimination complaints. Plaintiff expected to receive a better evaluation because his former supervisor, Kevin Tevebaugh, told Plaintiff that he would receive a good evaluation.

75. After filing these EEO complaints in October and November, 2014, Plaintiff received a written reprimand from Kevin Lenamond's supervisor, Robert Page, III. Kevin Lenamond and Robert Page, III are both Caucasian males. Plaintiff never had any contact with Robert Page, III before receiving this written reprimand.

76. After making complaints to ORM in late October and early November, 2014, Mr. Lenamond made false complaints to the Union that Plaintiff was coming to work late and leaving early. He also made other false complaints to the Union about Plaintiff.

77. Robert Page, III never contacted Plaintiff to respond to any of these allegations. After receiving this reprimand on or around January 20, 2015, Plaintiff filed an amended EEO complaint against Robert Page, III and Kevin Lenamond.

78. On or around February, 2015, Angela Williams was appointed Plaintiff's direct supervisor. On or around April 20, 2015, Plaintiff was informed by Angela Williams during his mid-year review that he was going to receive an unsatisfactory performance review. Plaintiff was surprised by this as his annual performance review did not end until September, 2015.

79. Defendant also contacted Willie Turner, the worker's compensation chief, regarding when Plaintiff would be off light duty. Robert Page, III was one of the individuals who contacted Mr. Turner regarding this.

80. Although, Plaintiff's duties are being called light duty, there is another employee doing these same duties and he is not on light duty.

81. On June 19, 2015, Plaintiff requested a religious accommodation to end his tour of duty early and work through lunch, during the month of Ramadan. This was an accommodation that his previous supervisor, Kevin Tevebaugh, had allowed.

82. Plaintiff asked for this request to make it easier for him to go to the temple and pray. His supervisor, Angela Williams denied this request.

83. Defendant's unfair treatment and harassment was in retaliation for plaintiff's opposition to the unlawful employment practices complained of in this complaint. But for plaintiff's opposition to unlawful employment practices complained of herein, plaintiff would not have been harassed.

84. The effect of defendant's actions, as alleged above, denied plaintiff equal employment opportunities in violation of Title VII. Plaintiff has suffered irreparable injury from the defendant's policy and practice as stated in this complaint.

85. Plaintiff has suffered injury to his health, emotional injury, and mental anguish as a result of defendant's actions.

86. Defendant acted with malice and reckless disregard to plaintiff's civil rights therefore

entitling plaintiff to punitive and/or exemplary damages.

87. Plaintiff is entitled to money damages for defendant's violation of his rights as guaranteed by Title VII.

## FIFTH CLAIM FOR RELIEF

**Violation of Title VII – Retaliation for Opposing Discrimination**

88. Plaintiff made his first complaint to the Office of Resolution Management and EEOC on or around October 29, 2014. He made another complaint in early November, 2014 regarding discrimination based on race, national origin, and religion against Kevin Lenamond.

89. On or around November 3, 2014, Kevin Lenamond made false accusations to the union regarding Plaintiff coming to work late and leaving early. Mr. Lenamond also made a complaint to the Union that Plaintiff yelled at him. Plaintiff has never had any issues coming to work late and leaving work early the entire time that he has been employed with Defendant. Also, Plaintiff previously made a complaint in late October, 2014 that it was Mr. Lenamond who blocked Plaintiff from leaving his cubicle and yelled at Plaintiff.

90. On or around November 19, 2014, Plaintiff received a performance evaluation of fully successful for the 2014 annual review. Plaintiff was surprised by this because before his previous supervisor left, he told Plaintiff that Plaintiff would receive a good evaluation.

91. On or around November 25, 2014, Kevin Lenamond sent Plaintiff an email claiming that he gave Plaintiff a previous written counseling on transfer tickets and that Plaintiff was not to transfer any work order tickets. Plaintiff had not received written counseling on transfer tickets and when he did receive what might have been a complaint from his supervisor, Kevin Lenamond, in October, 2014, Plaintiff asked for detail from his supervisor and never received a response. Also, on November 25, 2014, Plaintiff asked for the specific ticket number that his supervisor was referring to and again, Plaintiff received no response from his supervisor.

92. Plaintiff filed a formal written complaint of discrimination and retaliation against defendant, and his supervisor, Kevin Lenamond, on November 25, 2014. Plaintiff also sent Mr.

Lenamond an email that he believed this treatment to be discriminatory and retaliatory.

93. Within two months of filing this complaint, on or around January 20, 2015, Plaintiff received a letter of written reprimand from Kevin Lenamond's supervisor, Robert Page, III. Plaintiff never previously had any contact with Robert Page, III. Mr. Page never contacted Plaintiff regarding what had taken place or spoke with Plaintiff. Instead, Plaintiff just received this written reprimand against him from Defendant.

94. At the end of January, 2015, Plaintiff amended his complaint with the Office of Resolution Management and EEOC regarding Robert Page and Kevin Lenamond's discriminatory and retaliatory treatment.

95. Angela Williams was appointed Plaintiff's supervisor on or around February, 2015. Around April 20, 2015, Ms. Williams informed Plaintiff during his mid-year review that he was going to receive an unsatisfactory performance review. Plaintiff was surprised by this because the annual performance review period did not end until September, 2015 and Ms. Williams had only been his supervisor since February, 2015.

96. Also, in April, 2015, Robert Page, began asking Willie Turner, the Worker's Compensation chief, about when Mr. Baig would be off of light duty. Plaintiff was the only person being singled out regarding light duty and this occurred within three months of Plaintiff filing an EEO complaint against Robert Page and Kevin Lenamond.

97. No other employee's light duty was questioned. In fact, when Sammi Satterli was under worker's compensation, she was allowed to work from home. When she returned, she was promoted to a lead. This occurred around January 20, 2015.

98. On June 19, 2015, Plaintiff requested a religious accommodation to end his tour of duty early and work through lunch, during the month of Ramadan. This was an accommodation that his previous supervisor, Kevin Tevebaugh, had allowed. Plaintiff asked for this request to make it easier for him to go to the temple and pray. His supervisor, Angela Williams denied this request.

99. Based on knowledge and belief, plaintiff alleges that he was subjected to additional

harassment from the management at Defendant Department of Veteran Affairs in response to his complaints of discrimination and retaliation. Management was aware that Plaintiff made an EEO complaint and amended on several occasions.

100. Such unfair treatment and harassment was in retaliation for plaintiff's opposition to the unlawful employment practices complained of in this complaint. But for plaintiff's opposition to unlawful employment practices complained of herein, plaintiff would not have been harassed.

101. The effect of defendant's actions, as alleged above, denied plaintiff equal employment opportunities in violation of Title VII. Plaintiff has suffered irreparable injury from the defendant's policy and practice as stated in this complaint.

102. Plaintiff has suffered emotional and mental anguish as a result of defendant's actions, and resulting in injury to Plaintiff's health.

103. Defendant acted with malice and reckless disregard to plaintiff's civil rights therefore entitling plaintiff to punitive and/or exemplary damages.

104. Plaintiff is entitled to money damages for defendant's violation of his rights as guaranteed by Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment:

1. Declaring that the acts and practices complained of herein are in violation of Title VII, the ADEA and in breach of contract;
2. Awarding plaintiff any back pay with interest on any back pay awarded;
3. Awarding plaintiff any front pay with interest on any front pay awarded;
4. Awarding plaintiff any liquidated damages with interest on any liquidated damages awarded;
5. Awarding plaintiff any actual damages to justly compensate contractual losses;
6. Awarding plaintiff compensatory damages, punitive damages, and such other monetary

relief as may be deemed appropriate in amounts to be determined at trial;

7. Awarding plaintiff prejudgment and postjudgment interest to the maximum extent permitted by law;

8. Awarding plaintiff costs of suit;

9. Awarding plaintiff the cost of this action together with expert witness fees and reasonable attorney's fees, as provided by section 706(k) of Title VII, 42 U.S.C. §§ 2000e-6(k), and the ADEA, 29 U.S.C. §§ 621-633;

10. Directing defendant to pay plaintiff damages for his mental anguish;

11. Granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

By: ____*s/ William L. Nealy, II*____
William L. Nealy, II
Attorney-in-Charge
Texas Bar No. 24032898
Federal ID. No. 31796
2646 South Loop Fwy W, Suite 420
Houston, Texas 77054
Telephone (713) 228-3878
Facsimile (713) 227-3889
ATTORNEY FOR PLAINTIFF
MIRZA M. BAIG